IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  | CR 04-1179-TUC-CKJ |
| Plaintiff,  ) | **ORDER** |
| vs.  ) | |
| MICHAEL LOWELL SHERMAN,  ) | |
| Defendant.  ) | |

Pending before the Court is the Government's request to involuntarily medicate Defendant. For the reasons stated below, the request is denied.

**I. Background**

On 5/2/04, Defendant was arrested for Influencing, Impeding, or Retaliating against a Federal Official and for Assaulting, Resisting, or Impeding Certain Officers or Employees. On 5/5/04, Magistrate Judge Marshall ordered Defendant detained and further ordered a mental health evaluation. *See* Doc. #'s 4-6. On 6/10/04, Magistrate Judge Fiora held a status hearing whereby she noted that the Competency Evaluation found that Defendant was not competent to stand trial, both parties stipulated to this finding, and it was ordered that Defendant be committed to the appropriate facility to possibly restore competency. *See* Doc. #10; *see also* Doc. #11 (Psychiatric Evaluation of Defendant).

On 9/24/04, another status hearing was held before Magistrate Judge Fiora whereby the minute entry recognized that: "On June 6, 2004, the Magistrate Judge ordered that the

1  defendant was not competent to go forward in this matter. By an error of the clerk, the U.S.
2  Marshal's office was never notified. Gerard Guerin states that he will file a formal motion
3  and order for the court today to commit this defendant to the appropriate facility for treatment
4  and possible restoration." *See* Doc. #12. That same day, on 9/24/04, a formal order was
5  entered by Magistrate Judge Edmonds which stated that Defendant "shall be transported
6  forthwith to the custody of the Attorney General . . . pursuant to 18 U.S.C. §4241 . . . for a
7  period not to exceed four months. The Attorney General . . . shall hospitalize the defendant
8  in a suitable facility for a reasonable period of time as is necessary to allow the defendant to
9  undergo treatment to restore his competency to stand trial and to undergo a psychiatric
10 evaluation in order to determine whether he was insane at the time of the offense and whether
11 he is suffering from a mental disease or defect." *See* Doc. #15.

12         On 11/5/04, Magistrate Judge Fiora granted the Bureau of Prisons' ("BOP") request
13 that the evaluation period begin on 10/20/04 (the day Defendant was admitted to the Butner,
14 NC Mental Health Unit) and the 18 U.S.C. §4241(d) evaluation period would end on 2/15/05.
15 *See* Doc. #16. In March of 2005, a copy of the forensic evaluation of Defendant was given
16 to Magistrate Judge Fiora; the evaluation concluded that Defendant was insane at the time
17 of the offenses in question, was not competent to stand trial, and could not be restored to
18 competency unless involuntarily medicated. On 4/7/05, Magistrate Judge Edmonds set a
19 status hearing for April 18, 2005; however, at the request of defense counsel who wanted
20 more time to review the mental health reports, the status hearing was continued to 4/26/05.
21 *See* Doc. #'s 17-18. As reflected in the minute order pertaining to the 4/26/05 status
22 conference held by Magistrate Judge Edmonds, the parties had reviewed the *Sell* case,
23 probation was ordered to prepare a report calculating the likely guidelines sentence, and the
24 court stated that it would contact the physician who treated Defendant to set up a hearing.
25 *See* Doc. #19. On 5/6/05, due to her retirement, Magistrate Judge Fiora referred the case to
26 Magistrate Judge Estrada. *See* Doc. #20.

27         On 5/19/05, Magistrate Judge Edmonds set a video conference hearing regarding
28 Defendant's competency; the hearing was held on 6/20/05. *See* Doc. #'s 22, 24. As she

1  stated at the outset of the hearing: "[W]e are here for a hearing pursuant to Sell . . . we have
2  received a report from the Bureau of Prisons medical staff at Butner indicating that it is their
3  belief that Mr. Sherman is not competent to proceed to trial. And they have asked this Court
4  to order that he be forced to take psychotropic medications against his will in order to restore
5  his competency in this matter. That is why we're holding this hearing." *See* Transcript at 3.
6  Dr. Jill R. Grant (staff psychologist at Butner) and Dr. Peter Quintieri (a fellow in forensic
7  psychiatry at Butner) were involved in treating Defendant and appeared at the hearing to
8  testify.

9        As Dr. Grant made clear, they were never specifically ordered to evaluate
10 dangerousness (they were only ordered to evaluate criminal responsibility and competency
11 issues), that the dangerousness evaluation usually occurs only after the competency
12 evaluation, and therefore dangerousness was never evaluated by any experts. *See* Transcript
13 of Hearing at 13, 23. Rather, they only evaluated him for dangerousness in the facility, as
14 opposed to dangerousness in the community pursuant to 18 U.S.C. §4246. *See id.* at 23.
15 However, Dr. Grant did testify that Defendant was not criminally responsible at the time of
16 the crimes in question, that he is not competent as he suffers from a delusional psychotic
17 disorder (the persecutory type) which is typically treated by anti-psychotic medications, and
18 she thinks that psychological counseling would not be helpful without the medications. *See*
19 *id.* at 21, 24. Dr. Quintieri testified that the common side effect of the medications in
20 question was sedation, but the sedation side effect could be lessened by adjustment of the
21 doses of the medications. *See id.* at 27. He also testified that his medical record shows that
22 Defendant previously reacted well to these medications within 4-6 weeks, and there was no
23 record of Defendant having adverse reactions to the medications *See id.* at 27-28, 31. Lastly,
24 Dr. Quintieri concluded that counseling alone would not improve Defendant's condition, and
25 only medication could restore his competency. *See id.* at 29.

26       Near the end of the 6/20/05 hearing, Magistrate Judge Edmonds asked: "Now what's
27 the feeling of either counsel that we should have the Bureau of Prisons do a report on the
28 issue of dangerousness . . . [in relation] to the statute [i.e., 18 U.S.C. §4246]. *See id.* at 35.

1  In response, the Government stated "the Government would request it . . ." *Id.* Defense

2  counsel, Paul Bates, also stated in response: "Judge, I have no objection . . ." *Id.* As such,

3  Magistrate Judge Edmonds stated: "I will order then . . . that the Bureau of Prisons do a

4  dangerousness analysis pursuant to the statute [i.e., 18 U.S.C. §4246] . . ." *See id.* at 36.[1] In

5  addition, the 6/20/05 minute entry stated: "COURT ORDERS the following: 1) Bureau of

6  Prisons is to prepare a dangerousness analysis pursuant to the statute . . ." *See* Doc. #24.

7  Thereafter, the Government filed a Motion to Compel medication on 6/30/05, and the

8  next entry in the docket is on 10/24/05 whereby Defense counsel requested a status

9  conference. *See* Doc. #'s 25, 27. As of 10/24/05, there was no indication in the record that

10  the relevant authorities at the Bureau of Prisons were notified, or that an actual

11  dangerousness analysis had occurred, or that the Bureau of Prisons was in the process of

12  conducting a dangerousness analysis pursuant to 18 U.S.C. §4246.

13  As such, this Court began managing the case and held a status conference on

14  10/28/05. The Court indicated that the Government likely did not have a compelling interest

15  to compel involuntary medication pursuant to *Sell* as the Government's own experts stated

16  that Defendant was not criminally responsible for the offenses in question. Thereafter, the

17  Court ordered the parties to submit briefs regarding civil commitment procedures pursuant

18  to 18 U.S.C. §4246 no later than 11/14/05. *See* Doc. #'s 32, 33. After reviewing the briefs,

19  relevant law and holding a hearing on 11/28/05, this Court ordered that Defendant be

20  committed to the custody of the Federal Medical Facility in Butner, North Carolina ("FMC")

21  pursuant to 18 U.S.C. §4246; the FMC was ordered to evaluate Defendant to "determine

22  whether the defendant is presently suffering from a mental disease or defect as a result of

23  which his release would create a substantial risk of bodily injury to another person or serious

---

[1] Mr. Bates also indicated that he did not intend to obtain his own expert. *See* Transcript of Hearing at 39. Mr. Bates again indicated at the 10/28/05 status conference that he did not intend to obtain his own expert in light of the government experts who had already concluded that Defendant was not criminally responsible and was presently incompetent to stand trial.

1 damage to property of another." *See* Doc. #34. In March of 2006, this Court received the
2 FMC's forensic evaluation which concluded that Defendant does not meet the statutory
3 criteria for dangerousness as outlined in 18 U.S.C. §4246. As such, as the Government
4 concedes, the civil commitment procedures under §4246 are inapplicable. *See* Doc. #41. In
5 light of the most recent evaluation from the FMC, this Court held another status conference
6 on 3/23/06 and asked the parties to submit additional briefing on the pending issue of
7 involuntarily medicating Defendant. *See* Doc. #39. This Court received the additional
8 briefing from the parties on 4/17/06 and 4/20/06. *See* Doc. #'s 41, 43. As of the date of this
9 Order, all of the forensic mental health evaluations conclude that Defendant was insane at
10 the time of the offenses in question, Defendant is incompetent to stand trial, and Defendant's
11 mental disease or defect would not create a substantial risk of bodily injury to another person
12 or serious damage to the property of another if Defendant were released from custody. In
13 light of these facts, the Court will discuss the appropriateness of the Government's request
14 to involuntarily medicate Defendant.

15 **II. Discussion**

16 In support of its request to involuntarily medicate Defendant, the Government
17 essentially argues that due to Defendant's criminal history of engaging in threatening
18 behavior similar to the instant charges, the Government has an important interest in
19 involuntarily medicating Defendant such that he is restored to competency for trial. The
20 Government argues that: "Forced medication will significantly further those interests in that
21 forced medication will restore the defendant to competency and allow the case to be
22 adjudicated. In light of the apparent unavailability of 18 U.S.C. Section 4246, adjudication
23 and conditional release under a prescribed regimen of medical, psychiatric, or psychological
24 care or treatment pursuant to 18 U.S.C. §4243(e) would address state interests and also be
25 in the best interest of the defendant." *See* Doc. # 41 (Government's Brief at 3).

26 While there is no question that it would likely be in Defendant's best interest to have
27 a prescribed regimen of psychiatric treatment given the consistent record of his continuing
28

1 mental disease or defect, the Court is without authority to order the involuntary medication
2 of Defendant in light of recent Supreme Court authority and the undisputed facts in this case.

3       In *Sell v. U.S.*, the Supreme Court discussed the four requirements for involuntarily
4 medicating a defendant. *See* 539 U.S. 166. The Court in *Sell* stated in relevant part:

> First, a court must find that *important* governmental interests are at stake . . . Second, the court must conclude that involuntary medication will *significantly further* those concomitant state interests . . . Third, the court must conclude that involuntary medication is *necessary* to further those interests . . . Fourth . . . the court must conclude that administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition.

*Id.* at 180-181(emphasis in the original); *see also U.S. v. Rivera-Guerrero*, 426 F.3d 1130, 1136-1137 (9th Cir. 2005). As the Ninth Circuit discussed subsequent to *Sell*, the Supreme Court has recognized "a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause of the Fourteenth Amendment . . . *Sell* orders are disfavored . . . the [Supreme] Court's [decisions reflect] reluctance to permit involuntary medication except in rare circumstances." *Rivera-Guerrero*, 426 F.3d at 1136-1137.

      The Government can not meet the first two requirements under the *Sell* decision to forcibly medicate Defendant. While the Supreme Court has recognized that the "Government's interest in bringing to trial an individual accused of a serious crime is important . . . Courts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest." *Sell*, 539 U.S. at 180. Under the unique circumstances of this case, the Government's important interest in prosecution has been significantly reduced; further, those significantly lessened interests would not be advanced by involuntarily medicating Defendant. As the undisputed record in this case demonstrates, Defendant was insane at the time of the offenses in question; both of the forensic evaluations from the FMC make this conclusion. In light of these findings, and the lack of anything in the record to demonstrate otherwise, it appears to be a near certainty that a jury would have to conclude that Defendant would be not guilty by reason of insanity. Indeed, the Government seems to concede this

1 fact. In its brief, the Government seeks to involuntarily medicate Defendant such that the
2 case can be adjudicated and he can ultimately be given psychiatric treatment pursuant to 18
3 U.S.C. §4243(e). However, as §4243 is only triggered if a defendant is found not guilty by
4 reason of insanity, the Government's primary purpose to proceed to trial is to get an
5 inevitable not guilty by reason of insanity verdict triggering §4243. *See* 18 U.S.C. §4243(a).
6 Section 4243, however, allows the continued detainment of a defendant and an
7 accompanying regimen of psychiatric treatment only if it is determined that the defendant's
8 release would create a substantial risk of bodily injury to another person or serious damage
9 to another's property. *See* 18 U.S.C. §4243(d), (e), and (f). As the FMC officials have
10 already concluded that defendant's release would not create a substantial risk of bodily injury
11 to another person or serious damage to another's property in relation to their evaluation under
12 18 U.S.C. §4246, §4243 would ultimately be inapplicable and defendant would have to be
13 released from custody forthwith.

14 Accordingly, in light of these considerations, the Government's interest in
15 involuntarily medicating Defendant to restore his competency for trial is minimal as
16 Defendant will almost surely be found not guilty by reason of insanity. Further, the
17 Government's interest of proceeding to trial in order to invoke the procedures under §4243
18 is slight as these provisions would essentially be inapplicable as the FMC has already
19 concluded that Defendant's release would not present a substantial risk of bodily injury to
20 another or serious property damage to another. Lastly, involuntary medicating Defendant
21 will not significantly further the Government's interests which have been seriously
22 undermined due to the unique circumstances of this case; as Defendant would likely be found
23 not guilty by reason of insanity and the substantive provisions of §4243 would be totally
24 inapplicable, the interests in question would not be furthered whatsoever, let alone
25 significantly furthered. Therefore, the Court finds that the first two requirements of the *Sell*
26 case have not been satisfied, and the Government's request for involuntary medication must
27 be denied.

28

In light of this ruling, the Government may seek to voluntarily dismiss this case. The Government's options are quite limited as the following is currently undisputed:(1) Defendant was insane at the time of the offenses in question, (2) Defendant is incompetent to stand trial, (3) Defendant can only be restored to competency through forced medication, (4) Defendant can not be forcibly medicated pursuant to the *Sell* case; (5) Defendant therefore can not be restored to competency for trial and (6) 18 U.S.C. §4243 and §4246 are inapplicable as Defendant does not present a substantial risk of causing bodily injury to another or serious damage to another's property. While Defendant has informally requested dismissal of this case, the Court is unaware of an official motion filed with the Court specifically requesting an involuntary dismissal supported by relevant authority. As such, if the Government is unwilling to voluntarily dismiss the case, the Defendant shall inform the Court and file an appropriate written motion to dismiss supported by authority no later than **May 29, 2006**.

**III. Conclusion**

Accordingly, IT IS HEREBY ORDERED as follows:

(1) The Government's request to involuntarily medicate Defendant is **denied**.

DATED this 27th day of April, 2006.

Cindy K. Jorgenson
United States District Judge